UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE HERNANDEZ, a/k/a OSIRIS FERMIN,

                               :

                Petitioner,               05 Civ. 5336 (RPP)

                               :           02 Cr. 1213 (RPP)

              -against -          :   **OPINION AND ORDER**

UNITED STATES OF AMERICA,       :

                Respondent.     :
------------------------------------------------------------X

       On May 16, 2005, Petitioner Jose Hernandez ("Hernandez" or "Petitioner")

brought this pro se petition under his assumed name, Osiris Fermin, pursuant to 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence of 120 months in prison for

conspiring to distribute fifty grams or more of cocaine base in violation of 21 U.S.C.

§ 846.  Hernandez challenges his sentence on the grounds that he did not knowingly and

voluntarily agree to the terms of his Plea Agreement and that his counsel gave him

ineffective assistance by misleading Hernandez into believing that by entering a guilty

plea he would obtain a 5k1.1 letter.  Petitioner's § 2255 Petition ("Pet. Mem.") at 5.

The petition is denied for the reasons stated below.

**BACKGROUND**

       On September 17, 2002, Indictment 02 Cr. 1213 (RPP) (the "indictment") charged

Hernandez on two counts.  Count One charged Hernandez with conspiracy to distribute

fifty grams and more of cocaine base.  Count Two charged Hernandez with possession

with intent to distribute sixty-two grams of cocaine base.  Hernandez, his attorney, and

the Government executed a written Plea Agreement dated March 6, 2003 (the "Plea

Agreement").  See Government's Letter Brief of July 29, 2005 at Ex. A.  The Plea

Agreement stipulated that Hernandez's Guidelines Offense Level was 29 and that

Hernandez had three criminal history points and was in Criminal History Category II.[1]

Id. at Ex. A, 2-3. Because his criminal history category was Category II, Hernandez was

not eligible for safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and in

the plea agreement the Government and Hernandez stipulated that the applicable

Sentencing Guidelines range was 120-121 months. Id. Furthermore, the Government

agreed not to file a prior narcotics felony information against Hernandez pursuant to 21

U.S.C. § 851, which would have subjected Hernandez to a mandatory minimum term of

20 years. Id. at Ex. A, 1. On July 1, 2002, Hernandez pled guilty pursuant to the Plea

Agreement. During the plea allocution, the Petitioner was placed under oath and

confirmed that he was competent to testify and that he understood what he was doing.

The Petitioner also confirmed that he understood the Spanish interpreter at the beginning

of the hearings:

| | |
|---|---|
| THE COURT: | We have a court certified interpreter in Spanish here. If the defendant understands the interpreter easily, will he raise his hand? Does he understand it? |
| THE INTERPRETER: | Yes, sir. |
| THE COURT: | All right. He has raised his hand. |

Id. at Ex. B, 2.

The Petitioner pled guilty. On June 19, 2003, this Court held a Sentencing

Hearing wherein Hernandez was sentenced to 120 months' imprisonment and five years

of supervised release. On June 30, 2003, Hernandez filed a notice of appeal, and a

---

[1] One criminal history point is attributable to Hernandez's conviction of Attempted Criminal Sell of a Controlled Substance in the third degree on or about December 20, 2000. The other two were incurred, in accordance with U.S.S.G. §4A1.1(d), because Hernandez committed the current crime during his probation period.

subsequent appellate brief was filed on May 12, 2004. The Government moved to dismiss the appeal or, in the alternative, that the judgment be summarily affirmed. On September 23, 2004, the judgment was summarily affirmed by the Second Circuit Court of Appeals.

On May 10, 2005, Hernandez filed this present motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Hernandez asserts that his counsel misrepresented that if he pled guilty he would be able to obtain a 5k1.1 letter. Pet. Mem. at 5. He claims that counsel repeatedly made promises regarding the 5k1.1 letter and that he pled guilty as a result. Id.[2]

**Standard of Review**

Since Petitioner is proceeding pro se, his submissions will "be liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d. Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and read "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d. Cir. 1996) (internal citation omitted). Section 2255 of Title 28 of the United State Code provides in relevant part:

> A prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon
> the ground that the sentence was imposed in violation of
> the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such a sentence, or
> that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set
> aside or correct the sentence.

---

[2] Hernandez also claims that his appellate counsel, Donna Newman, failed to communicate with him regarding the disposition of his appeal, which was dismissed on September 23, 2004. Pet. Mem. at 10. Even if Ms. Newman did not notify Petitioner that his appeal had been dismissed, nonetheless Petitioner does not demonstrate that he suffered any prejudice as a result of the lack of communication by counsel since he has filed this petition in a timely manner under 28 U.S.C. § 2244(d)(1) (establishing a one-year period of limitation for the application of a writ of habeas corpus). Therefore, any claim Petitioner is making with respect to ineffective assistance of his appellate counsel is denied.

28 U.S.C. § 2255. "Prisoners seeking habeas relief must not only prove that constitutional violations occurred at trial, but also that such errors caused substantial prejudice or a fundamental miscarriage of justice." Ciak v. United States, 59 F.3d 296, 301 (2d. Cir. 1995). Ineffective assistance of counsel claims "are appropriately litigated in the context of a collateral challenge in the district court and not on direct appeal . . . because the trial record is not developed precisely for the object of litigating the ineffective assistance claim, but instead is devoted to issues of guilt or lack of guilt." Zhang v. United States, 401 F. Supp. 2d, 233, 237 (E.D.N.Y. November 18, 2005), citing Massaro v. United States, 538 U.S. 500, 504-05 (2003).

**DISCUSSION**

Petitioner asserts that his counsel was ineffective, thus violating his right to counsel, and that this ineffective assistance induced him to enter a plea of guilty that he would otherwise not have made. To establish a claim for ineffective assistance of counsel, Petitioner must meet the two requirements established in Strickland v. Washington, 466 U.S. 668 (1984). Hernandez must show that (1) his counsel's performance was deficient, and that (2) counsel's deficient performance prejudiced the defense. Id. at 687. The performance of counsel is deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In asserting these claims, the petitioner has the burden of overcoming the presumption that his counsel's representation was reasonable. As the Supreme Court stated in Strickland,

> Judicial scrutiny of counsel's performance must be highly
> deferential . . . it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. (emphasis omitted). In addition to demonstrating deficient performance by counsel, a petitioner must show that the deficiency had an effect on the result and that the error was prejudicial to the petitioner. Id. at 691-96. Hernandez's claim falls short of both of the Strickland prongs and therefore is denied.

**Hernandez Has Not Demonstrated Deficient Performance by His Counsel**

Hernandez's claim is conclusory and refuted by the record. Hernandez's petition does not point to any evidence suggesting that Hernandez's counsel was deficient. Moreover, Hernandez's claim that his plea was not voluntary and that he was somehow pressured into accepting the plea is actually contradicted by the record. Petitioner repeatedly indicated that he was satisfied with his legal representation and that he was not forced by anyone to plead guilty. Government's Brief, Ex. B at 5.

The Court also ensured that Hernandez had read the Plea Agreement in his native Spanish language and that he understood it and entered into it voluntarily:

> THE COURT:          Have you received a copy of this letter dated March 6, 2003, that counsel states is a plea agreement between yourself and the federal government?
>
> THE DEFENDANT: Oh yes, we read it.
>
> THE COURT:          Has it been read to you in Spanish?
>
> THE DEFENDANT: Hmm-Hmm.
>
> THE COURT:          Is it your plea Agreement with the Government of the United States?

THE DEFENDANT: Yes.

THE COURT: Did you enter into it voluntarily?

THE DEFENDANT: Yes.

Id. at 6.

The Court ensured that Hernandez was not entering into the plea agreement because of promises not contained in the agreement itself.

THE COURT: Did anyone make any promises to you other than the promises that are contained in the plea agreement in order to get you to enter into this plea agreement?

THE DEFENDANT: No.

MR. HERRMANN: Your Honor, there were no other promises made to get him to enter into the plea agreement. I did promise him that I would again ask the prosecutor for the opportunity for a proffer session. And it is my understanding that possibility has not totally foreclosed, but I'm not optimistic about it. But I did promise him I would ask and I did again ask.

MR. BAROFSKY: And, your Honor, just to stress for the record, it is the government's current position not to permit Mr. Fermin to come in to proffer, and I want to make sure he has a full understanding today that his decision to plead guilty or not or if he decides not to plead guilty, that has no impact on that decision and that he is not entering a plea of guilty today with the hope that he may have an opportunity like that down the line. That's not the present intention of the government.

THE COURT: Mr. Fermin, did you hear what Mr. Barofsky just said and what Mr. Herrmann just said?

THE DEFENDANT: Yes.

THE COURT: Are you agreeing to plead guilty in this matter?

THE DEFENDANT: Yes.

THE COURT: Without regard to any hope you may have with respect to the future proffer to the federal government; do you understand?

THE DEFENDANT: No, I didn't really understand it.

THE COURT: Are you pleading guilty pursuant to the terms of the plea agreement, Mr. Fermin?

THE DEFENDANT: Hmm-hmm. Yes, yes.

THE COURT: And do you agree that your plea of guilty will be a voluntary plea of guilty without regard to any hopes you may have for a future proffer from the government?

THE DEFENDANT: Yes.

THE COURT: Is that satisfactory?

MR. BAROFSKY: Yes, your Honor. I believe Mr. Fermin understands that at this time the government has no intention of bringing him into a proffer and that his plea of guilty is certainly not a condition for any future proffer. I think that's clear from the record.

THE COURT: Did you hear what Mr. Barofsky just said, Mr. Fermin?

THE DEFENDANT: What did he say?

THE COURT: I thought that might be the response.

MR. HERMANN: Your Honor, may I tell you what I told him based on my conversation with Mr. Barofsky, it's part of it. I have told him all along that I would communicate to Mr. Barofsky what could be offered in a proffer session. I'm somewhat constricted in what I am saying right now for the fact that it's a public hearing. I have been in touch with Mr. Barofsky, he knows that, so has counsel for his brother who is his co-defendant. I explained to Mr. Fermin why he wasn't eligible for safety

7

valve because he is criminal history II, he had one point from the prior conviction, and two points because this occurred while he was still under probation supervision. He would otherwise be eligible for safety valve. We've gone into all that. We have gone into what information could be discussed at a proffer session. And I have told him that it is the government's present stance, as it has been for the past month or so, that at this point they are not interested in talking to him, but that possibility is not totally foreclosed in the future. In part it depends on other circumstances and conferences with other people, including the brother. It's exactly what I told him, because that's my understanding of the government's current position. I have told him I'm not optimistic it will take place, but it is not an absolute written in concrete hundred percent no. It is a no at present. And that, you know, if he didn't sign this agreement, and if he didn't plead guilty today, that he would be looking down the throat of a 20 year minimum, because of the prior conviction, even though it was a drug sale on which he got probation. It's been very clearly discussed with him.

THE COURT:          Mr. Fermin, have you heard what your attorney just said?

THE DEFENDANT: Hmm-hmm, yes.

THE COURT:          And do you believe it to be true of your own knowledge?

THE DEFENDANT: Yes.


THE COURT:          And do you understand that the government says that it has no intention at present, and it is not making any promises that it will have in the future, any interest in hearing a proffer from you?

THE DEFENDANT: Yes.

Id. at 7-9.

Eviscerating a plea bargain simply because the defendant "claims" counsel was ineffective, i.e. where the validity of the Petitioner's claim is contradicted by the record, would make the entire plea allocution process worthless. See United States v. Gonzalez, 970 F.2d. 1095, 1100-01 (2d Cir. 1992) (stating that mere allegations and conclusory statements that contradict the record are not sufficient to warrant an evidentiary hearing). On at least two separate occasions, on July 1, 2002 at his Plea Hearing and on June 19, 2003 at his Sentencing Hearing, Hernandez had the opportunity to express dissatisfaction with counsel and he failed to do so. Hernandez has failed to provide any evidentiary support for his general claim that he entered into the Plea Agreement because of counsel's promise of a 5k1.1 letter. Therefore, his claim of ineffective assistance of counsel in relation to the Plea Agreement or the entry of his plea is without merit.

**Hernandez Has Not Suffered Prejudice**

The second prong of Strickland requires that the petitioner show that counsel's deficient performance prejudiced him. A petitioner demonstrates prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

Here, Petitioner has not shown that counsel's errors were deficient, and the Court finds that he has not been prejudiced. Petitioner has not shown or pointed to anything in the record which would indicate that "the result of the proceeding would have been different" but for the performance of his counsel. Id. Accordingly, the Petitioner has not proven the second prong of Strickland and his petition must be denied.

**CONCLUSION**

Hernandez has not shown ineffective assistance of counsel or prejudice and,

accordingly, his petition must be denied.

IT IS SO ORDERED.

Dated: New York, New York
May 10, 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

Jose Hernandez, a/k/a Osiris Fermin
#52561-054
F.C.I. Allenwood
P.O. Box 1000
White Deer, PA 17887

Michael J. Garcia
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
By:    Neil M. Barofsky, A.U.S.A.
Tel:    212-637-2333
Fax:    212-637-0086